293 Cranston Firefighters et al. v. Gov. Gina M. Raimondo et al. Good morning, your honors. Elizabeth Wiens for Cranston Fire and Cranston Police. May I please reserve three minutes for rebuttal? Yes. May it please the court. As you know, there were four counts to our complaint. I'd like to start with the first count, that's the Contracts Clause claim, and specifically plaintiff's allegation that the 1996 special legislation created contractual obligations on the part of the state. First, I have to emphasize that under Iqbal and Twombly, plaintiffs need only plead sufficient facts to make relief plausible on his face. Not likely, not probable, but plausible. And we believe if this court reviews the complaint de novo, as the standard requires, it will see that we have alleged sufficient facts to make a Contracts Clause claim plausible on its face. Specifically, if you look to the language that we cite in our complaint, the language of the special legislation has already been found, more general legislation has already been found to create a contract in Rhode Island in five different Superior Court cases. Am I correct, there is no claim in this case for improper feature contract under Rhode Island law? That is correct. We have grievances pending pursuant to the collective bargaining agreements, and those are on hold pending this case. Why is there no claim against the state for, doesn't Rhode Island have a contract clause like the federal constitution? Yes. So why is there no claim against Rhode Island for violating that clause? Because even if we proved that they breached the contract, they would still say we had a reasonable and necessary reason to do so, and we'd have to go to those next two prongs anyway. So our claim is that if you look at the language of our special legislation, it's different than some of the other cases that were cited, certainly in the District of Rhode Island. The problem is it doesn't have, it doesn't say it's a compact, as in the Port Authority case. It doesn't say it's a contract. It doesn't say there's no future amendments, and when we look at our two prior cases that are most clearly on point, it seems to me they were a very focused search for language like that, which is the only official pronouncement by the legislature as to whether it thought it was passing a statute, as in normal courts would presume, or was actually entering into a binding contract that it could not change. That's correct, Your Honor. In the two First Circuit cases, I think you're referring to the language of the statute in those cases made it clear that there was no contract, and it did that by having language showing that the legislator gave up its right to amend the contract in certain aspects. One of the cases had to do with COLAs, and because the court in Maine said, the General Assembly in Maine said, you're allowed to find a contractual obligation for everything but the COLAs. So what the court said is, they know how to make a contract. They did it in this legislation. We don't need to look outside the complaint because it's clear here they did not intend to apply this to the COLAs. Doesn't the NE case out of Rhode Island, the opinion by Judge Bredin, that seems to say we start with the presumption that a future legislature can change prior legislation. That's a very important policy, that one legislature not automatically bound future ones. And so starting with that presumption, we then engage in a search, and we engage in a search for whether there's language in the statute that just makes it very clear that we should abandon that presumption because the state very expressly said, we are binding ourselves in a contractual way as in Port Authority. And if that's the correct mode analysis, I don't know what language you're pointing to in this statute that would get you there as opposed to pointing to circumstances that led to the enactment of the statute. We think the language in this particular statute is the fact that fire and police were required to give up their pension benefits, waive and renounce all private pension benefits in the city of Cranston. No other statute has that. And no other statute throughout the country that we've looked at has that particular language. In addition, this court, I've cited cases in my brief, has to look at what the state court would do with this particular issue. And it seems that the lower court, the district court, did agree with that, that it is a question of state law. But you just told me one of the reasons you didn't file a state law claim is you'd ultimately lose the state court because of the second half of the state court analysis, which under state law would allow a violation even of the contract if there were a reasonable need for the state. So if we look to state law, then we're going to be back to you lose. Well, state law, actually, we would win because the court found on five occasions that the language of the statute... Well, that was a puzzle because I thought you just told me you didn't bring... You did not tell me you didn't bring a winner claim. We did not bring a breach of contract claim because even if we were to prove breach of contract, the state would come back and say, yeah, we breached the contract, but we had to do it. We had all these... So under state law, then, you're telling me you were not protected from what has happened here under state law? We may not have been entitled to a... I don't know that there would be a breach of contract claim under state law. I'm not sure, but even if we proved it, we knew that their whole argument throughout this whole process has been even if we breached the contract, we had to do this. We had a reasonable and necessary reason to do this, and we did so as necessary as we could. So are you saying reasonable and necessary would not go into the analysis in the federal court? It would if we got to that point. Right now we're only on the first question. So if it would go into our analysis here, I guess I'm not understanding why here and not there. If the question is why we didn't file a contracts claim in state court as opposed to here, is that the question you're asking? No, under state law. You're confusing us as to what is the difference between state and federal law, because it seems you must assume there is a great difference because you've sued only under federal rather than state. And when you tell us that you would lose under the state law because they have this defense, but then turn around and tell us that in deciding the federal law we should look to what the state law is, you seem to create an unhappy circle for yourself. Sure. I wasn't saying that we would lose under state law. What I would say is if it was a breach of contract, even if we proved breach of contract, the city would then go on and the state would then go on to say, sure, you breached the contract, but we had a reason for it. So under either the state or the... Won't they do that here if you're allowed to go forward? They will. So we could have filed in state court, and we did. We were in state court for a long time. After the amendment, the statute was amended, we chose, we met with our clients, and we decided to come to federal court for many reasons, including the fact that we could streamline the issue. So under either state contracts clause law or federal law, we believe there's no doubt there's a contract. The question is which venue would we want to do the contracts clause analysis in, and we chose this venue, not because we believe we would lose in the state venue, but simply because of other considerations. Now when you tell us to look to state law, it seems to me you're making an argument that this is a darn good case for Pullman abstention on your other claim because there's going to be a determination of state law as to whether the ordinance created the statute, created the contract, and you have a claim in this case as to whether the ordinance created the statute, and you've now told us we should look to see what the state courts do with that. That sounds like Pullman abstention. Well, Pullman requires two criteria. One is substantial uncertainty with state law. There is no substantial uncertainty. We have five cases where the court said the statute may and does create a contract. Well, then you should be really happy with the Pullman abstention because what you just said is it's certainly going to win at the Rhode Island Supreme Court and that will then bind this court on this issue as you've told us we should look to state law. The problem with that is that... Why would you take any chance that we might reach a contrary decision in the meantime? That's an excellent question. The second problem with Pullman is that abstention will or may well obviate the need to go forward. In federal court, there's three scenarios that can play out in Supreme Court. One is the court doesn't even reach the contract issue, which is quite likely given that it really wasn't the basis for the appeal. Second, the court can say, under the particular facts of that case, they do find a contract, in which case we will certainly be back here in federal court arguing, see, there's a contract, but the defense will certainly be arguing, well, the facts are different, and the facts are different in the two cases. I think you just said if you win, if the plaintiffs win in the Rhode Island Supreme Court, you're going to take that decision and run across the street to the federal court as fast as you can to show it to the federal judge. That's true. If that happens... That sounds like a really good Pullman abstention that you should be moving for. Well, I think the biggest reason that we're here, Your Honor, is because on count one, which is whether or not the statute creates a contract... Sure, but we've got the ordinance count. Are you abandoning your claim that the ordinance is a contract? Oh, no, not at all. And isn't that the precise issue going up, potentially, to the Rhode Island Supreme Court? Not exactly, because it's different provisions of the ordinance, and more importantly... But what's the difference between A, B, and C that is material? Well, let's put it this way. If the plaintiffs win in the Rhode Island Supreme Court, should we presume that that win will have nothing effect on this action because it's got a different provision of the ordinance? No, it will have an effect, but unfortunately, Pullman abstention, you can't just look at it as, will this help? It has to be an issue of substantial uncertainty, and it has to obviate or likely obviate the need for the federal court to go forward because the federal courts have a duty to exercise their jurisdiction. Don't you be arguing that it likely obviates if you win over there? It does not, because if the state wants to, I guess, concede that if they win over there, we'll win, then... Judge Thompson's question was what you're going to argue. I think you want to be really careful here, because if you're right that they're going to win, you may regret some of the things you're leading towards saying here today, because you're going to be undercutting... I think you're going to want to be arguing that that is darn significant, what the Rhode Island Supreme Court does, if the plaintiffs win there. And I will, but we'll still be back in federal court for the other two criteria. But the Pullman abstention is on the ordinance issue. Yes, but they're not reaching the other two issues with respect to us in Supreme Court. The only issue that could affect us in Supreme Court is the number one issue, is there a contract? The other two issues have nothing to do with us, because the facts are so different. And I just want to quickly point out that we think it was clear error for the court to dismiss the case on Pullman and not stay, and that is because we may be robbed of the opportunity to even come back. May I finish? Yes. To even come back to federal court after the Supreme Court rules, because of statute of limitation issues. But that wasn't raised below. Because below, Your Honor, if I may, the case law was clear that there was an obligation to stay, and it was never argued on the other side that this is a particular case, please don't stay, let's dismiss this. I only meant that the statute of limitations piece wasn't brought to the judge's attention. That's correct. I don't believe. Good morning, and may it please the court. Nicole Benjamin on behalf of the state defendants, the governor, the treasurer, and the employees retirement system of Rhode Island. I will be addressing the constitutional issues as they relate to counts one and two to the extent that those constitutional claims arise under the state statute. I will also be addressing count four, a count that the district court correctly interpreted as purporting to state a claim on behalf of retirees. My colleague, Nicholas Nybo, who represents the city of Cranston, will be addressing counts one through three to the extent that those constitutional claims arise under the, or purport to arise under the collective bargaining agreements and the ordinances with the city of Cranston. With respect to the constitutional claims, each of the claims requires a contract right. And as Judge Keado recognized, there is a very strong presumption that laws and statutes do not create contracts. The presumption is that the notion is that the legislature creates laws that set policy, not that make contracts. What do you say about the argument that I hear the other side making, that yes, what you just said is correct and normal course, but here there was something quite unusual, which is the very law itself required some of the plaintiffs or all of the plaintiffs, individuals, to surrender certain contractual rights they had with the municipality. And that is the loose thread on your sweater here. There are two points, Your Honor. The first point is that that may be true. The surrender may be true for some of the plaintiffs, but certainly not for all of them. If that surrender happened, it would have happened back in 1995. But the second and more important point is that that language is simply not the type of language that the courts look to to determine whether contractual rights have been made. Because that presumption is so strong, courts insist on language that is particularly strong. Language such as – Haven't we said that we're not confined to just the language and trying to make a determination as to whether a contract is in existence? Yes, there's a presumption, but presumptions are rebuttable. And we looked to the circumstances surrounding the enactment, the language. This has the particular twist of contractual language actually being in the ordinance itself. This court has said – And once again, this is pleadings. This is pleadings, and it's a plausibility standard, whereas a lot of the cases that the city has cited and the state has cited are summary judgment cases. That's correct, Your Honor. This court has held repeatedly that the language is the most important criteria and that the language is indicative of what the legislature's intention was. This court has also recognized that there are circumstances that can inform the court's analysis of what the legislature intended. But it must be – In all of those situations, in our court dealing with it, didn't the court first determine the language did not give a right, and then it looked to the circumstances to show that that actually doubled down and was consistent with that? That's precisely right. So they lose on summary judgment. There were a number of cases that were decided on summary judgment. There is, in fact, one decision from this court that was decided on a motion to dismiss, and that's the Rhode Island Brotherhood of Correctional Officers. In more recent times, though, after the plausibility standard has been adopted by the federal court, the Sixth Circuit in the Puckett v. Lexington case also determined that what was pled there did not meet the plausibility standards. And there they said that while the court was sympathetic to those who had given years of dedicated service, they were required to plead facts stating a clear intent on the part of the legislature to create a contract right. That's what we have here. There is no allegation of a clear right to a contract. Isn't the lynchpin view, it seems to me, the first question we ask is, is the statutory language sufficient to create a right? If we answer that no, then we need to ask the question, can I change that answer by looking at the circumstances outside the statute? And if the answer to that is no, then the case is over and it doesn't make any sense whether it's 126 or 56 because it's an issue of law. But if the answer is yes, that we could overbear the absence of such language in the statute by looking to something in the circumstances, then wouldn't it follow that we need to have some potential fact-finding, at least if the alleged circumstances are plausibly enough? There would have to be sufficient allegations to make such circumstances plausible. Here the allegations are that there were negotiations with the city, negotiations with the state retirement board. None of those are evidence of what the legislature as a whole intended. And that's what's required under this circuit's law. Judge Torea, although I realize he's not here today, he authored the decision in Parker v. Wakeland. And in that case, what he said is that we cannot find that the legislature as a whole unmistakably intended to create a contract. Isn't that another way of saying that you should not look outside the language of the statute when the statute doesn't have the words? Because the statute's the only way that allows you to ascertain the intent of the legislature as a whole. In some jurisdictions, in some states, there is legislative history. In Rhode Island, there is not. We have no written legislative history. So there are not circumstances outside of the plain language of the statute. Were there committee hearings? There were committee hearings. None that are alleged here. The only allegation of something beyond the discussions that we've talked about that are alleged is an explanation by the legislative council. And even that doesn't have any of the words indicating that it was created to create a contract. It doesn't say that it can never be repealed or amended. It doesn't say that it will bind future legislatures. I'd also like to briefly turn to the last issue with respect to the claim asserted on behalf of retirees. There's no question that the Cranston police and fire plaintiffs here do not have standing to assert claims on behalf of retirees, and the district court correctly determined that that's what their allegations sought to do. In allegation after allegation of their complaint, they have alleged certain harm as to retirees, not as to themselves, not as to their members, but as to retirees who they do not represent. So the district court correctly dismissed that count as to Cranston police and fire. Thank you, Your Honor. Good morning, Your Honors, and may it please the court. My name is Nick Nybo, and I represent the Apele, the city of Cranston. As my colleague, Ms. Benjamin, indicated, I will be arguing with respect to the abstention decision in this case, and I agree with Judge Cayada. This is a darn good case for Pullman abstention. The city respectfully requests that this court affirm Judge Lacey's... Why in the world dismiss instead of stay? Isn't the strong presumption that we stay to avoid risks of throwing someone out of court? The strong presumption, of course, under Pullman is that the court would stay. If we were to... Suppose the plaintiffs win in the Rhode Island Supreme Court, and so the condition for the Pullman abstention is now over, and indeed the plaintiffs... I think they're saying they would be in a better position then. And suppose they then refile this lawsuit. Will the state assert statute of limitations or any type of repose as a bar to such a lawsuit? Well, I should be clear, I shouldn't speak on behalf of the state. Well, there you go then. So you can't give us an assurance. So because the court didn't follow the usual practice of staying, which the Supreme Court has encouraged, it has perhaps unwittingly exposed the plaintiffs to the types of perils that would usually cause us to opt for a stay rather than a dismissal. That's true, Judge Cayada. I realize that you represent the city. So the question is on behalf of the city. And that was the point I was going to, Judge Thompson. Thank you very much. On behalf of the city, the issue with the statute of limitations is that it's been thrown out there for the first time on appeal with no particular statute cited, no particular time that would apply for the statute of limitations. So there's waiver. So we may rule your way on waiver. But assume we get to the merits because we're talking about an equitable decision where the court's gone against the presumption. I take it you can't give us any guarantee on behalf of the state because you don't even speak for the state. And I think Judge Thompson's question was, well, how about on behalf of the city? Will you give us a guarantee that the city will not assert any type of defense of repose or limitation? I cannot make a guarantee before the court today. However, I would state that the plaintiff's claim in this case is at the last piece based on legislation from 2015. And while there's no statute of limitations specifically alleged in the complaint or any specific statute of limitations that was argued below, I'm not aware of any statute of limitations issues with conduct that legislatively occurred two years ago. And I think the bigger question is... But it might be well more than two years by the time the Rhode Island Supreme Court acts. It may be, Your Honor, but I think that it's indicated. I think the record reflects that the Rhode Island Supreme Court proceeding is well along and we expect that we're in the briefing calendar as we speak. Let me ask it this way. Put a waiver, and I'm not suggesting that there's no waiver or not, but put a waiver to one side, okay? And let's assume we don't know how long the Rhode Island Supreme Court is going to take. Is there any good reason why a court should dismiss the plaintiff's claims without prejudice rather than staying them when invoking Pullman abstention? Yes, there is. What is that? The reason, Your Honor, is that in this case, assuming this court agrees with Judge Lacey's decision on everything except for the remedy, the stay versus dismissal without prejudice, what is left on stay, a stay of litigation, are constitutional claims based upon city ordinance and city collective bargaining agreements. These plaintiffs in this case have stated to this court that they seek no relief from the city, that the only relief they seek is from the state. So they would be effectively through this stay of litigation seeking a declaratory judgment and injunctive relief from the state based on city documents. The city, there's no relief sought from the city. And that's presumably one of the reasons why Judge Lacey decided to dismiss without prejudice was the fact that similar to the Harris County case and some of its progeny in federal court, and I concede that it's sparse, but the Harris County case exists. And the Harris County case serves the purpose of allowing Pullman abstention to result in dismissal without prejudice in very narrow procedural circumstances. Well, aren't they seeking a declaratory judgment against the city also? The plaintiffs, the appellants have represented to this court in their motion for reconsideration that they seek no relief against the city. There was some disagreement about, or I should say some confusion below about the case caption. The case was originally styled as the city of Cranston as a defendant. Then it was later captioned as a third party, excuse me, interested party. Judge Lacey's decision had the city of Cranston as a defendant. That confusion led to the motion practice on the case caption. But through their motion to reconsider, the appellants have told this court that they seek no relief from the city. So if this case is remanded back down to the federal district court on a stay position, we will have litigation with the unions, the plaintiffs, against the state as the only defendant in interest. It sounds like you're saying you would have been entitled to a 12B6 dismissal for failure to plead a claim against your client. It's possible, however, a 12B6... Well, if not, then there is a claim against you. The issue with a 12B6 motion, Your Honor, would be we would have been asking the federal court to decide issues that we believe to be in the proper province of the Rhode Island Supreme Court right now. I don't think that we could properly have brought a 12B6 without asking the court to resolve... Then you've got sort of a bootstraps issue here because you're then saying that we should find the Pullman dismissal proper because you would have been entitled to a 12B6, but you don't want to move for a 12B6 until the Pullman issue is over. Well, I don't know, Your Honor, that we would have been entitled to bring a 12B6 because, again, we were pled as an interested third party. It says right in the complaint, I believe it's paragraph 17, that we are an interested third party, and the plaintiffs have said they do not seek any relief from the city of Cranston. So we're in a situation where they're seeking declaratory judgment for the court to review city ordinances and city collective bargaining agreements, but not seeking any relief from the city. The state is the only party they seek relief from. And if that is what the plaintiffs have pled, that is exactly the type of procedural oddity that the U.S. Supreme Court was considering in Harris County with the Texas declaratory judgment statute, and that led the Supreme Court in Harris County to say, in this very narrow situation, we will permit a dismissal without prejudice under Pullman. And that's exactly what we have in this case. The Texas case was based upon a peculiar Texas law that says if there's something pending in federal court, then they won't even hear it. I mean, that's not the situation here. No, the situation here is based on peculiar pleading tactics, which is to plead the city of Cranston not as a true defendant in interest from whom you seek relief, but rather as a third party, interested third party. So I completely concede, although both cases do relate to procedural oddities having to do with the declaratory judgment statutes. And, of course, as this court well knows, the federal declaratory judgment statute, 2201, requires that all interested parties be pled into the case when possible. And the reason for that is that for a declaratory judgment to be binding on all necessary parties, those parties need to be properly before the court. Let me put it this way. How is your client harmed by a stay as opposed to a dismissal? May I be permitted to answer the question? Please. Thank you. Our client, the city of Cranston, is not specifically harmed by a stay instead of a dismissal. However, Your Honor, the standard review that's applicable to Pullman, and this has been briefed so I'm not going through it, and I know I'm out of time, but the standard review is an abuse of discretion review. And the remedy that the judge elects to use under Pullman should be similarly reviewed for abuse of discretion. And under abuse of discretion, the appellee is not necessary for the appellee to show prejudice if the decision is reversed. Thank you. Just briefly, Your Honors. It was the state's action in passing the Pension Act that is the harm that was caused to our clients. The city didn't pass the pension statute. The state did. That's why we named the state as the defendant, the city as an interested party, because of course it has an interest in saying whether or not it's a party to a contract with respect to the ordinance or collective bargaining agreement. So if you don't have a claim against the city, as counsel for the city just argued, why do you care if it's been dismissed? Because we have claims against the state with respect to the ordinance and the collective bargaining agreement. Our claim against the state is that the state, by enacting that statute, violated our contracts with the city. So the state clearly would still be a party and interest in this case. And briefly, I just want to respond to the legislative intent argument. This court said in Maine Association of Retirees, a plaintiff seeking to establish intent may rely not only on words used in the statute, but also apparent purpose, context, and any pertinent evidence of intent. And we've offered not only evidence of the context under which the 1996 legislation was passed, but also facts indicating that there were negotiations. There was an actuarial study done. We think that's an important factor. But, I mean, AARP negotiates with congressional staff over changes to the Social Security legislation. And they have meetings. They go back and forth. They dicker, we'll give up, we'll give up that. And then we have a statute that has a colon provision in the Social Security Act. Are you saying those are contracts? I would say that's one factor that you would look at. And another factor is- Well, there you go. Because you can have lobbying, which we could call meetings and negotiations, on virtually every statute that a legislature passes. You could. But in this case- And you're saying, therefore, there's a factual issue as to whether the future legislatures can change those? Exactly. That, along with other facts, including an employer-employee relationship, the reason why the unions went in and allowed this to be amended. Because, remember, it could not have been enacted without the permission of the union. Because pension benefits are subject to negotiation in Rhode Island. So if the union had not agreed to reopen its contract and negotiate with the city and ultimately the state representatives, the union would still be in the private pension system. And they made it clear that if we're going to move from this private pension system to the state system, we need guarantees. And we believe we've alleged enough facts in our complaint- Suppose the legislature or the legislative staff who was in on this meeting you tell us about said something like, this is a binding contract the state will never break, you have my word. And then they left the meeting. Is the rest of the legislature now bound by that? It is not. I think it's one factor you look at. And it's not just statements from legislators. You must be saying that it has some effect on the rest of the legislature. Why would we pay any attention to it? I think it's not necessarily that it binds it, Your Honor. It's that you have to look at the context around how this legislation came to be. And that might be one very small piece of how it came to be. But we think we've alleged enough for the court to draw a reasonable inference that we can state a claim. Thank you.